**EDELSBERG LAW, P.A.**
Scott Edelsberg (CA Bar No. 330090)
scott@edelsberglaw.com
1925 Century Park East, Suite 1700
Los Angeles, CA 90067
Tel: 305-975-3320

**KALIELGOLD PLLC**
Jeffrey D. Kaliel (CA Bar No. 238293)
jkaliel@kalielpllc.com
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783

**KALIELGOLD PLLC**
Sophia G. Gold (CA Bar No. 307971)
sgold@kalielgold.com
950 Gilman Street, Suite 200
Berkeley, CA 94710
Telephone: (202) 350-4783

*Counsel for Plaintiff and the Putative Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| **MICHAEL SLIWA,** individually, and on behalf of all others similarly situated, | Case No.: _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| **SEZZLE INC.,** | |
| Defendant. | |

Plaintiff Sliwa, individually and on behalf of all others similarly situated, hereby brings this Class Action Complaint against Defendant Sezzle Inc. ("Sezzle") and alleges as follows:

## INTRODUCTION

1.      This lawsuit is brought as a class action on behalf of Plaintiff, the general public, and thousands of similarly situated Sezzle customers who have been deceived and will be deceived into using Sezzle's buy now, pay later service by the company's misrepresentations and omissions, in marketing materials, regarding the true operation and risks of the service. These risks include the real and repeated risk of multiple insufficient funds fees ("NSF fees") or overdraft fees imposed by users' banks as a result of automated Sezzle transfers from consumers' checking accounts.

2.      Sezzle's buy now, pay later service specifically targets poor consumers and those struggling to make ends meet on a week-to-week basis. This group is its core constituency.

3.      To that group, Sezzle purports to offer a solution to cash-strapped consumers: Sezzle prominently markets Sezzle as a service that allows users to pay for purchases at a later date, with "no interest." And while Sezzle's marketing representations warn that Sezzle may charge users fees when there are insufficient funds for a payment, they never warn users of the even more damaging outcome: repeated bank fees from users' own banks for using the Sezzle service.  These representations and omissions are deceptive. In fact, there are huge, undisclosed fees and "interest" associated with using the service.

4.      Sezzle's services thus cause unsuspecting consumers like Plaintiff to incur significant overdraft and NSF fees on their linked bank accounts.

5.      Unfortunately, Sezzle's operation, along with its deceptive and incomplete marketing materials, means that users like Plaintiff end up paying

huge amounts of fees and interest, which Sezzle falsely assures users they will not receive.

6.     In its rush to tout itself as convenient, simple, automatic, and free, Sezzle does not disclose that overdraft and NSF fees are a likely and devastating consequence of the use of its service. No reasonable consumer would run this risk.

7.     This massive risk is known to Sezzle but is omitted from all of its marketing.

8.     Had Plaintiff and the Class members known of the true operation and risks of the Sezzle buy now pay later service, they would not have used the Sezzle service.

9.     Moreover, Sezzle continues to disseminate its false and misleading advertising to the general public to this day. Unless enjoined, Sezzle will continue to deceive members of the general consuming public into signing up for and using Sezzle's service.

10.     Plaintiff and the Class members have been injured by Sezzle's practices. Plaintiff brings this action on behalf of themselves, the putative Class, and the general public. Plaintiff seeks actual damages, punitive damages, restitution, and an injunction on behalf of the general public to prevent Sezzle from continuing to engage in its illegal practices as described herein.

## PARTIES

11.     Plaintiff Sliwa is a citizen and resident of Long Beach, CA.

12.     Defendant Sezzle, Inc. is a Minnesota corporation with its principal place of business in Minneapolis, MN.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds

$5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class is a citizen of a different State than Defendant. The number of members of the proposed Class in aggregate exceeds 100 users. 28 U.S.C. § 1332(d)(5)(B).

14.  This Court has personal jurisdiction over the Defendant because it regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this District.

15.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## **FACTUAL ALLEGATIONS**

### **A.  Overview**

16.  The concept of "buy now, pay later" has existed since the birth of credit cards. Sezzle and other companies like Klarna, Affirm and Afterpay have expanded this concept to offers point-of-sale loans for online and in-store purchases and through their mobile apps, allowing users to avoid paying in full for products at hundreds of online and in-person stores by breaking up payments into four installments—allowing users to pay off a purchase over the next few months.

17.  According to the Sezzle website, app and advertisements online including on social media, the service comes with no interest. And while Sezzle's marketing representations warn that Sezzle may charge users fees when there are

insufficient funds for a payment, they never warn users of the even more damaging outcome:  repeated bank fees from users' own banks for using the Sezzle service.

18.   Here's how it works.  At checkout at an in-person store, or online, a user is offered a Sezzle option as an alternative to other, traditional methods of payment.  During that checkout experience, Sezzle offers short marketing messages regarding its supposedly fee and interest-free service.

19.   If a user chooses to use Sezzle, her provides basic personal details like name, date of birth and address, debit card.  She then is provided specific payment plan details.

20.   For example, if the total purchase is $50, Sezzle breaks that total into four payments of $12.50, with the first installment due at checkout and the remaining three deducted every two weeks.   The user's bank account will be charged for the first payment and automatically charged every two weeks until the balance is paid in full.

21.   The whole process takes a few seconds—and at no time during that process does Sezzle warn potential users of the true risks of using its service. To the contrary, during the checkout and sign up processes, Sezzle repeatedly touts itself as a free service—without fees, interest, or other catches.

22.   The Sezzle interface and marketing representation promise:

**Have your Cake and Eat it Too**

With Sezzle, you can buy more, pay later. Split your order into 4 interest-free payments over 6 weeks, so that you get what you need, when you want.

23.   Sezzle does warn users that it may charge fees in certain cases where insufficient funds exist to make a payment:

> We get it. Sometimes life just happens! If we aren't able to process a payment, maybe because your card has expired or we get an insufficient funds notice from your bank, a fee* is added to that payment. However, there is a grace period** during which the fee can be waived automatically if you successfully resolve the payment. If you have a failed payment, your due dates are automatically rescheduled and no new purchases are authorized until that payment is resolved.

24.   While Sezzle's marketing representations warn that Sezzle may charge users fees when there are insufficient funds for a payment, they never warn users of the even more damaging outcome:  repeated bank fees from users' own banks for using the Sezzle service.

25.   Moreover, those bank fees add up to huge "interest," albeit not assessed by Sezzle, in the form of overdraft and NSF fees assessed by banks processing Sezzle payments.

26.   Overdraft fees, which banks charge when they pay small-dollar purchases into an insufficient account balance, are a highly profitable part of the banking sector that exclusively targets the very poor. According to a 2017 study by the Consumer Financial Protection Bureau, 5 percent of all bank accounts have over 20 overdrafts a year, which produce 63.3 percent of all overdraft fees paid by consumers. Another 4.2 percent of bank accounts have over ten overdrafts a year and make up more than 15 percent of fees paid by consumers.

27.   This is the same group of consumers that Sezzle targets with its marketing: consumers living paycheck to paycheck.  As a result, Sezzle knew or should have known that such users were at extreme risk of overdraft and NSF fees when using the Sezzle service.

28.    When a bank pays an overdraft, it makes a loan to its accountholder in the amount of the overdraft.  The overdraft fee is a payment the accountholder makes for the extension of credit for the overdrawn amount.

29.    A 2008 Federal Deposit Insurance Corporation (FDIC) study showed that overdraft fees carry an effective APR in excess of 3,500 percent.

30.    Alternatively, when banks do not make payments, but rather return them unpaid, they charge the same $28-$39 fee, but term it an "insufficient funds" or "NSF Fee."  In that circumstance, the accountholder is assessed the fee even though her payment is not paid.

31.    Worse, and as occurred with Plaintiff, Sezzle repeatedly re-processes payments that are not successful on the first attempt—*causing multiple NSF Fees on the same repayment*.

32.    In short, the entire premise of Sezzle is to provide immediate access to goods and services and avoid bank fees and interest charges. That is why consumers are shocked to discover that Sezzle causes significant bank fees and/or interest charges.

33.    Using Sezzle's service causes unsuspecting consumers like Plaintiff to incur massive fees on their linked bank accounts.

34.    Sezzle misrepresents (and omits facts about) the true nature, benefits, and risks of its service, functioning of which means that users are at extreme and undisclosed risk of expensive bank fees when using Sezzle. Had Plaintiff been adequately informed of these risks, he would not have used Sezzle.

35.    As alleged herein, Plaintiff had no idea small, automatic Sezzle repayments could cause multiple $34-each NSF fees from his bank.

**B.    Plaintiff's Experience**

36.    When Plaintiff signed up for Sezzle and was induced to provide Sezzle with his highly sensitive banking information, she was not aware that

Sezzle's service had a significant "catch" and that significant penalties, including "interest" and/or "fees," could result.

37.   For example, in December 2021, Plaintiff made a purchase using Sezzle.

38.   On December 27, 2021  Sezzle made a payment deduction from his checking account at Chase as a partial repayment of that purchase.  As a result, Plaintiff's bank charged him a $34 NSF Fee.

39.   Over the next month, Plaintiff's account was assessed three other $34 NSF fees as a result of Sezzle repayments.

**C.   Sezzle's Deceptive Marketing**

40.   In marketing and promotions, Sezzle describes its service as simple, convenient, and easy—a no-fee, no-interest way for consumers to receive their purchases before they have money to pay for them.

41.   Sezzle's marketing never warns consumers of the extreme and crushing NSF and overdraft fee risk of using the service.

42.   Sezzle conceals from users the punishing risk of NSF and overdraft fees on small dollar Sezzle repayments.

43.   Sezzle's marketing materials—including within the app, in app stores, and on Sezzle's website—never disclose these risks and material facts, instead luring consumers to sign up for and use the service with promises of ease, convenience, and fee/interest avoidance.

44.   Sezzle knows that its service is likely to cause its low-income users to incur large bank fees.

45.   Sezzle's representations—which all users view during the sign-up process—are false and contain material omissions.

46.   Sezzle misrepresents the true nature, benefits and risks of the service, which targets users with an extreme and undisclosed risk of Sezzle triggering

expensive, earnings-depleting bank fees. Plaintiff would not have used Sezzle if he had been adequately informed of the risks of bank fees. As alleged herein, Plaintiff had no idea small, automatic Sezzle repayments could cause bank fees from their bank; and he had no idea Sezzle would repeatedly reprocess transactions when his account had insufficient funds.

47.     Sezzle's marketing never discloses the most devastating risk of using the service—that days of earnings can be wiped out by bank fees associated with using the service.

## **CLASS ALLEGATIONS**

48.     Plaintiff brings this action individually and as representatives of all those similarly situated, on behalf of the below-defined Class (the "Class"):

> All persons who used the Sezzle buy now, pay later service and incurred an overdraft or NSF Fee as a result of a Sezzle repayment deduction.

49.     Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staffs.

50.     This case is appropriate for class treatment because Plaintiff can prove the elements of their claims on a class wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

51.     **Numerosity:** The members of the Class are so numerous that joinder of all members would be unfeasible and impracticable. The precise membership of the Class is unknown to Plaintiff at this time; however, it is estimated that the Class number is greater than one hundred individuals. The identity of such membership is readily ascertainable via inspection of Defendant's books and

records or other approved methods. Class members may be notified of the pendency of this action by mail, email, internet postings, and/or publication.

52.   **Common Questions of Law or Fact:** There are common questions of law and fact as to Plaintiff and all other similarly situated persons, which predominate over questions affecting only individual Class members, including, without limitation:

(a)   Whether Sezzle's representations and omissions about its service are false, misleading, deceptive, or likely to deceive;

(b)   Whether Sezzle failed to disclose the NSF and overdraft fee risks of using its service;

(c)   Whether Plaintiff and the Class members were damaged by Sezzle's conduct;

(d)   Whether Sezzle's actions or inactions violated the consumer protection statute invoked herein; and

(e)   Whether Plaintiff is entitled to a preliminary and permanent injunction enjoining Defendant's conduct.

53.   **Predominance of Common Questions:** Common questions of law and fact predominate over questions that affect only individual members of the Class. The common questions of law set forth above are numerous and substantial and stem from Sezzle's uniform practices applicable to each individual Class member. As such, these common questions predominate over individual questions concerning each Class member's showing as to his or her eligibility for recovery or as to the amount of his or her damages.

54.   **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, Plaintiff and all Class members were similarly injured through Sezzle's uniform misconduct as alleged above. As alleged herein, Plaintiff, like the members of the Class, were deprived

of monies that rightfully belonged to them. Further, there are no defenses available to Sezzle that are unique to Plaintiff.

55.  **Adequacy of Representation:** Plaintiff is an adequate class representative because they are fully prepared to take all necessary steps to represent fairly and adequately the interests of the members of the Class, and because their interests do not conflict with the interests of the other Class members they seek to represent. Moreover, Plaintiff's attorneys are ready, willing, and able to fully and adequately represent Plaintiff and the members of the Class. Plaintiff's attorneys are experienced in complex class action litigation, and they will prosecute this action vigorously.

56.  **Superiority:** The nature of this action and the claims available to Plaintiff and members of the Class make the class action format a particularly efficient and appropriate procedure to redress the violations alleged herein. If each Class member were required to file an individual lawsuit, Sezzle would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual plaintiff with its vastly superior financial and legal resources. Moreover, the prosecution of separate actions by individual Class members, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual Class members against Sezzle, and which would establish potentially incompatible standards of conduct for Sezzle and/or legal determinations with respect to individual Class members which would, as a practical matter, be dispositive of the interests of the other Class members not parties to adjudications or which would substantially impair or impede the ability of the Class members to protect their interests. Further, the claims of the individual members of the Class are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attending thereto.

## FIRST CAUSE OF ACTION
### Violation of California's Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code § 17200, *et seq.*
### (Asserted on Behalf of the Class)

57.   Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

58.   California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice."

59.   Sezzle's deceptive conduct related to material omissions and/or material misrepresentations that it provides risk-free repayment service through its website and mobile app violates each of the statute's "unfair," "unlawful," and "fraudulent" prongs.

60.   The UCL imposes strict liability. Plaintiff need not prove that Sezzle intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

61.   A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

62.   Defendant's practices as described herein are (a) immoral, unethical, oppressive, and/or unscrupulous and violate established public policy as recognized by, *inter alia*, causing injury to consumers which outweigh any purported benefits or utility.

63.   A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

64.   Defendant's practices, as described herein, constitute "fraudulent" business practices in violation of the UCL because, among other things, they are likely to deceive reasonable consumers, who do expect that they can occur expensive bank fees—and sometimes, multiple bank fees—for using Sezzle's service.  On the media on which Defendant communicated to consumer as they were making a purchase decision, Defendant concealed the material fact that the cost to use the Sezzle service can far exceed the "free" price represented.

65.   A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

66.   Among other statutes, laws, and/or regulations, Defendant's acts and practices violate the following statutes, laws, and/or regulations:

(a) Violating Cal. Civ. Code § 1750, *et seq*.;

(b) Engaging in conduct in which the gravity of harm to Plaintiff and the Class outweighs the utility of the Defendant's conduct; and/or

(c) Engaging in acts and/or practices and/or omissions that are immoral,

unethical, oppressive, and/or unscrupulous and causes injury to consumers which outweigh its benefits.

67.    Sezzle committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.,* by affirmatively and knowingly misrepresenting on its website and mobile app that the true risks and operation of its service.

68.    Defendant's acts and practices offend an established public policy of fee transparency in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

69.    The harm to Plaintiff and the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

70.    Sezzle's business practices have misled Plaintiff and the proposed Class and will continue to mislead them in the future.

71.    Plaintiff relied on Defendant's misrepresentations.

72.    Had Plaintiff known the true risks of using the service, he would have chosen another method for receiving food from Sezzle or ordered food from another provider.

73.    As a direct and proximate result of Sezzle's unfair, fraudulent, and/or unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and present a continuing threat to Class members that they will be deceived into making purchases with the Sezzle service.

74.    As a result of its unfair, fraudulent, and unlawful conduct, Sezzle has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

## SECOND CAUSE OF ACTION
### Violation of California's False Advertising Law ("FAL")
### Cal. Bus. & Prof. Code §§ 17500, *et seq.*
### (Asserted on Behalf of the Class)

75.    Plaintiff re-alleges and incorporates the preceding allegations by reference as if fully set forth herein.

76.    California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any ... corporation ... with intent … to dispose of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any

statement...which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

77. Defendant's material misrepresentations and omissions alleged herein violate Bus. & Prof. Code § 17500.

78. Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

79. Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seeks an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of misrepresenting their delivery fees.

80. Further, Plaintiff and the members of the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

81. Additionally, Plaintiff and the Class members seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

**THIRD CAUSE OF ACTION**
**Violation of Minnesota's Consumer Fraud Act**
**Minn. Stat. § 325F.68, *et seq*.**
**(Asserted on behalf of the Class)**

82. Plaintiff re-alleges and incorporates the preceding allegations by reference as if fully set forth herein.

83.    The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby..." MINN. STAT. § 325F.69, subd. 1.

84.    Defendant, Plaintiff, and the Class members are "persons" as defined in Minn. Stat. § 325F.68, subd. 3.

85.    Defendant's buy now, pay later service is "merchandise" as defined in Minn. Stat. § 325F.68, subd. 2.

86.    As described herein, Defendant violated the Minnesota CFA by knowingly and intentionally misrepresenting and failing to disclose material facts regarding the risk of incurring expensive bank fees—and often repeated bank fees—for using Sezzle's buy now, pay later service. On the media on which Defendant communicated to the consumer as they were making a purchase decision, Defendant concealed the material fact that the cost to use the Sezzle service can far exceed the "free" price represented.

87.    Defendant intentionally misrepresented the risks and true costs of its buy now, pay later service through online marketing materials to induce consumers to make purchases with the Sezzle service. These risks include the real and repeated risk of multiple insufficient funds fees ("NSF fees") or overdraft

fees imposed by users' banks as a result of automated Sezzle transfers from consumers' checking accounts.

88.   By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the risks of incurring expensive bank fees as a result of automatic repayments for Sezzle's service, as detailed above, Defendant engaged in one or more misleading or deceptive business practices prohibited by the Minnesota CFA.

89.   Defendant's misleading statements and deceptive practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about Defendant's buy now, pay later service.

90.   Defendant had superior knowledge and bargaining power in its transactions with consumers. Defendant knew these facts, but concealed them, in order to induce consumers into making purchases with the Sezzle service. These concealed facts are material because reasonable consumers, like Plaintiff and the Class members, will not choose to utilize a "free" service that they know includes the risk of incurring expensive and repeated bank fees.

91.   Plaintiff and the Class members utilized Defendant's buy now, pay later service in reliance on Defendant's misrepresentations, omissions,

concealments, and/or failures to disclose material facts regarding its purported "free" service.

92.     Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and Class members would not have made purchases using Sezzle's service, or would have chosen another method to make a purchase or purchase the item with another provider.

93.     Defendant's violations of the Minnesota CFA present a continuing risk of future harm to Plaintiff and the Class members.

94.     Plaintiff's claims inure to the benefit of the public because the relief he seeks will benefit the public generally. Defendant's buy now, pay later service is marketed widely in the State of Minnesota and nationwide, and Plaintiff, Class members, and other members of the consuming public who may consider utilizing Sezzle's service in the future will not be able to trust the advertising and marketing of Sezzle's service without the relief sought herein.

95.     Plaintiff and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Minnesota CFA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available pursuant to Minnesota's Private Attorney General Statute. Minn. Stat. § 8.31, subd. 3a.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, demands a jury trial on all claims so triable and judgment as follows:

A.     Certifying the proposed Class pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiff as representative of the Class, and appointing counsel for Plaintiff as lead counsel for the respective Class;

B.     Declaring that Sezzle's policies and practices as described herein constitute a violation of the state consumer protection statutes invoked herein;

C.     Enjoining Sezzle from the wrongful conduct as described herein;

D.     Awarding restitution of all fees at issue paid to Sezzle by Plaintiff and the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

E.     Compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

F.     Awarding actual and/or compensatory damages in an amount according to proof;

G.     Punitive and exemplary damages;

H.     Awarding pre-judgment interest at the maximum rate permitted by applicable law;

I.      Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

J.      Awarding such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated:  May 6, 2022                    Respectfully submitted,

                                       **EDELSBERG LAW, P.A.**

                                       By:  */s/ Scott Edelsberg*
                                       Scott Edelsberg (CA 330090)
                                       scott@edelsberglaw.com
                                       1925 Century Park East, Suite 1700
                                       Los Angeles, CA 90067
                                       Tel: 305-975-3320

                                       **KALIELGOLD PLLC**
                                       Jeffrey D. Kaliel
                                       *jkaliel@kalielpllc.com*
                                       Sophia Goren Gold
                                       *sgold@kalielgold.com*
                                       1100 15the Street  NW, 4th Floor
                                       Washington, D.C.  20005
                                       Tel: (202) 350-4783

                                       *Counsel for Plaintiff and the Class*